# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re: ETERON, INC.,

**Jointly Administered Debtors.**[1]

Chapter 11
Case No. 18-45161-pjs
(Jointly Administered)
Hon. Phillip J. Shefferly

---

## MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER 11 U.S.C. §363 FREE AND CLEAR OF LIENS AND INTERESTS WITH LIENS AND INTERESTS TO TRANSFER TO SALE PROCEEDS

ETERON, INC., debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), moves this Court for an order approving the sale to JVIS Investments, Inc. ("JVIS") of certain property of the Debtor's estate—namely, the Debtor's equipment, inventory, vehicles and other property set forth in the proposed asset purchase agreement attached to this motion (the **"Business Property"**)—outside the ordinary course of the Debtor's business, in accordance with section 363(b)(1) and (f) of Title 11 of the United States Code (the "Bankruptcy Code"), subject to competing bids, and established bidding procedures and guidelines. . In support of this Motion, the Debtor states as follows:

## I. PROCEDURAL BACKGROUND

---

[1] In addition to the "Lead Case" of Eteron, Inc. (Case No. 18-45161-pjs), the Debtors shall also include Sakura, LLC (Case No. 18-45163-pjs)

1. On April 13, 2018 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101-1330 (as amended, the "Bankruptcy Code"). The Debtor continues to operate its business and manage its assets as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No committee has been appointed by the United States Trustee.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157 and 1334. Venue is proper pursuant to 28 U.S.C. §1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory basis for the relief requested lies in 11 U.S.C. § 363.

4. In the recent cash collateral hearing before this Court, the Debtor indicated that a sale may be a possibility in this case. The Debtor intends this Motion to facilitate such a sale on terms commercially reasonable to the estate and its creditors. Because the proposed sale to JVIS is subject to higher and better offers, and because Old National Bank (the "Lender") may wish to "credit bid" its secured claim against the Business Property, the Debtor respectfully requests that the Court adopt certain bidding guidelines (the "Guidelines") that will ensure that the Business Property is sold on commercially reasonable terms and that the value of the Business Property is maximized for the benefit of all creditors.

## II. AUTHORITY TO SELL PROPERTY OF THE ESTATE

5. Bankruptcy Code section 363(b)(1) provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The decision to enter into an agreement out of the ordinary course of a debtor's business is to be based on the reasonable business judgment of the debtor. Courts generally approve nonordinary course sales under § 363(b)(1) where two standards are met: (1) business justification; and (2) the sale occurred in good faith. *In re Met-L-Wood Corp.*, (7th Cir. 1988) *cert. denied*, 490 U.S. 1006 (1989); *In re Lionel*, 722 F.2d 1063 (2d Cir. 1983); *In re Continental Airlines*, 780 F.2d 1223 (5th Cir. 1986)*In re Shary*, 152 BR 724, 725 (Bankr ND Ohio, 1993). The court should approve a use, sale, or lease of property under Bankruptcy Code section 363(b) if the debtor has established some articulated business justification for the proposed transaction. *In re Walter,* 83 B.R. 14, 16 (9th Cir. BAP 1988).

6. Given the Debtor's cashflow challenges, the Debtor's continuing obligations to its creditors and its estate, and the loss of its largest customers, the sale of the Debtor's Business Property to JVIS is well within the Debtor's reasonable business judgment. More than half of the manufacturing work done by the Debtor was provided to CPK. Following the loss of its CPK work (the Debtor's largest customer), the Debtor's principal became aware that several other clients began preparations to move their flocking work away from Debtor based on growing concerns surrounding Debtor's ability to continue supplying flocked parts. For this

reason, the Debtor, in the exercise of its best business judgment, has determined that selling the Business Property to JVIS, (which is affiliated with a current client of Debtor and known by the Debtor to be financially sound.), will greatly enhance the Debtor's ability to complete its orderly liquidation and maximize the return to its creditors.

7. The terms offered by JVIS are the most favorable that the Debtor has received since the beginning of this Chapter 11 case and will generate substantial income to the estate, at very least satisfying the Lender's secured claim against the Business Property. In addition, the Debtor's estate will be relieved of all expenses arising from the continued operation of the manufacturing facility and it will allow the Debtor time to focus on its plan for an orderly wind-down and liquidation. The sale of the Business Property to JVIS is a key component of what must be accomplished before the Debtor may seek confirmation of a plan of liquidation, a process that could begin in earnest very shortly after completion of the sale.

### III. TERMS OF THE SALE

8. In accordance with the Purchase Agreement, dated June 21, 2018, between the Debtor and JVIS (a copy of which is attached as Exhibit B), JVIS has agreed subject to bankruptcy court approval to purchase, and the Debtor has agreed to sell, the Business Property under the following terms and conditions:

a. **Purchase Price.** The Business Property (including the equipment, inventory, all vehicles, and personal property located at the Debtor's facility, and all licenses, designated contracts, easements, covenants, and related rights necessary or appropriate for operation of the manufacturing facility) is to be sold to JVIS for $380,000 (the "Purchase Price"), subject to higher and better offers solicited at a public auction conducted in this Court as described below;

b. **Closing—Conditions.** The Purchase Price is payable in cash immediately available at the date and time that all conditions precedent to the sale of the Business Property set forth in the Purchase Agreement are satisfied, excused, or otherwise discharged, and the Debtor presents for transfer to JVIS or the highest bidder any title to the Business Property and all related assets sold in accordance with the Purchase Agreement (the **"Closing"**);

c. **Closing—Date.** The Closing is to occur no later than July 27, 2018

d. **Executory Contracts.** The Debtor, as a condition precedent to the Closing, is to assume and assign to JVIS or the highest bidder all executory contracts so designated for assumption by JVIS pursuant to the Purchase Agreement ;

e. **Statutory Protections.** The parties to the Purchase Agreement are entitled to the protections contained in Bankruptcy Code section 363(m);

f. **Operation of Business Property.** JVIS or the highest bidder will assume operation at Closing.;

g. **Higher and Better Offers.** The Purchase Agreement is subject to higher and better offers, such offers to conform with all requirements set forth in the Motion and Order Approving Sale Procedures filed concurrent with this sale motion;

h. **Break-Up Fee and Overbid Procedure.** In the event that JVIS is outbid in accordance with the Bid Procedures Order it will be entitled to a $25,000 break-up fee to compensate for its investment in the sale process and negotiations required to complete the Purchase Agreement.

## IV. SALE FREE AND CLEAR OF LIENS

9. The Purchase Agreement provides that the Business Property be sold to JVIS free and clear of all liens against that property, most specifically the purported lien held by the Lender, but also including any unrecorded mechanic's and materialmen's liens or utility charges. Such a sale is appropriate under the circumstances present in this case and the explicit provisions of Bankruptcy Code §363(f), which provides that property may be sold under §363(b) "free and clear of any interest in such property…if…(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." The Lender's lien on the Business Property is security for repayment of a note; as such, the Lender could be compelled in a legal proceeding to accept a money satisfaction of that interest, thereby satisfying §363(f)(5).

WHEREFORE the Debtor respectfully requests that the Court enter the order set forth as **Exhibit 1**: approving the sale of the Business Property to JVIS in accordance with the provisions of the Purchase Agreement, subject to higher and better offers as solicited by a public auction conducted in accordance with the Guidelines set forth above; and providing that the Business Property be sold free and clear of all liens in accordance with Bankruptcy Code §363(f)(4); and  finding that the buyer is a good faith purchaser entitled to the good faith purchaser protections of Section 363 (m) and  (d) granting any additional relief the Court deems appropriate.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re: ETERON, INC.,                           Chapter 11
                                               Case No. 18-45161-pjs
**Jointly Administered Debtors.**
[1]
                                               (Jointly Administered)
                                               Hon. Phillip J. Shefferly

## ORDER APPROVING SALE OF PROPERTY OF THE ESTATE OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER 11 U.S.C. §363 FREE AND CLEAR OF LIENS AND INTERESTS WITH LIENS AND INTERESTS TO TRANSFER TO SALE PROCEEDS

THIS MATTER having come before the court upon Eteron, Inc., Debtor in Possession's Motion (the "Debtor") to Approve Sale of Property of the Estate Outside of the Ordinary Course of Business Under 11 U.S.C. §363 Free and Clear of Liens and Interests with Liens and Interests to Transfer to Sale Proceeds (the "Sale Motion"), notice of the Sale Motion having been served on all creditors and parties in interest and no objections having been timely filed or served as stated in Debtor's Certification of Non-Response.

THE COURT HEREBY FINDS DETERMINES AND CONCLUDES THAT:

---

[1] In addition to the "Lead Case" of Eteron, Inc. (Case No. 18-45161-pjs), the Debtors shall also include Sakura, LLC (Case No. 18-45163-pjs)

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

B. The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. sections 157 (b) (1) and 1334 (b) and to grant the relief requested in the Motion . Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. Section 157 (b) (2).

C. As evidenced by the affidavits of service notice of the Motion was proper and provided to all necessary parties.

D. Emergent circumstances and sound business reasons exist for the Sale of the Business Property (as defined in the Motion) pursuant to the Agreement. Entry into the Agreement and consummation of the sale constitute the exercise by the Debtor of sound business judgment and such acts are in the best interest of the Debtor, the estate and all parties in interest. The court finds that the Debtor has articulated good and sufficient business reasons justifying the Sale of the Business Property to the Purchaser. Such business reasons include, but are not limited to, the following: (i) the Agreement constitutes the highest or otherwise best offer for the Purchased Assets; (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the

Purchased Assets and avoid decline and devaluation of the Debtor's business; (iii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Agreement and the closing thereon will provide a greater recovery for the Debtor's creditors than would be provided by any other presently available restructuring alternative.

E. The Agreement was negotiated undertaken by the Debtors and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). Provided additional bids are received, an Auction will be conducted in accordance with the Bid Procedures Order, as a result of the foregoing, the Debtors and Purchaser are entitled to the protections of Bankruptcy Code section 363(m). Moreover, neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Agreement to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

F. The total consideration provided by Purchaser for the Purchased Assets is the highest or otherwise best offer received by the Debtors,

G. Purchaser would not have entered into the Agreement and would not consummate the Sale, if the sale of the Purchased Assets to Purchaser was

not free and clear of all Liens, Claims, Interests and Encumbrances, or if Purchaser would, or in the future could, be liable for any of such Liens, Claims, Interests and Encumbrances. A sale of the Business Property other than one free and clear of Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

H. The Debtors may sell the Business Property free and clear of all Liens, Claims, Interests and Encumbrances (other than the designated Assumed Liabilities), because, with respect to each creditor asserting a Lien, Claim or Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims, Interests and Encumbrances who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale Motion and Sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens, Claims, Interests and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having (i) their Liens, Claims,

Interests and Encumbrances attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they assert a Lien, Claim or Interest with the same rights and priorities that they held against the Business Property or (ii) their Liens, Claims, Interests or encumbrances remain unchanged by the Sale with the same rights and priorities that they held against the Business Property.

I. Immediately prior to the entry of this Order, Purchaser was not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser and any of the Debtors. Pursuant to the Agreement, Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets, and Purchaser is not holding itself out to the public as a continuation of the Debtors. Those of the Debtors' employees who are to be employed by Purchaser pursuant to the Agreement, are being hired under new employment contracts or other arrangements to be entered into or to become effective at or after the time of the Closing. The Transactions do not amount to a consolidation, merger or de facto merger of Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between Purchaser and the Debtors, there is no

continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and Purchaser does not constitute a successor to the Debtors or the Debtors' estates.

J. The transfer the Business Property will be a legal, valid, and effective transfer of the Business Property, and will vest Purchaser with all right, title, and interest of the Debtors the Business Property free and clear of any and all liens, claims, interests, and encumbrances (including, without limitation, Liens, Claims, Interests and Encumbrances as defined in the Agreement) of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non- material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 case, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture,

modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest the Business Property, or any similar rights, (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the business prior to the Closing Date, including the transfer of the Business Property to the Purchaser, and (iii) that relate to or arise under doctrines of successor liability (all such liens, claims, interests, and encumbrances listed herein, the "Liens, Claims, Interests and Encumbrances"), other than the Designated Assumed Liabilities.

K. Time is of the essence in consummating the Sale. Accordingly, to maximize the value of the Debtors' assets, it is essential that the sale of the Business Property occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

L. Approval of the Agreement, and consummation of the Sale of the Business Property at this time are in the best interests of the Debtors, their creditors, their estates, and all parties in interest.

M. Based upon all of the foregoing, and after due deliberation,

IT IS HEREBY ORDERED THAT:

1.  The relief requested in the Motion is Granted.

2.  The Debtor is authorized to sell the Business Property defined in the Sale Motion to JVIS or the highest bidder (referred to as "Buyer" or "Purchaser") at public auction according to the following terms:

a.  **Purchase Price.** The Business Property (including the equipment, inventory, all vehicles, and personal property located at the Debtor's facility, and all licenses, contracts, easements, covenants, and related rights necessary or appropriate for operation of the manufacturing facility) is to be sold to JVIS for $ 380,000.00 (the "Purchase Price"), or to the highest and best offer solicited at a public auction as set forth in the Order Approving Sale Procedure;

b.  **Closing—Conditions.** The Purchase Price shall be payable in cash immediately available at the date and time that all conditions precedent to the sale of the Business Property set forth in the Purchase Agreement are satisfied, excused, or otherwise discharged, and the Debtor presents for transfer to JVIS or the highest bidder any title to the Business Property and all related assets sold in accordance with the Purchase Agreement (the "Closing");

c.  **Closing—Date.** The Closing is to occur no later than July 27, 2018;

d.   **Executory Contracts.** The Debtor, as a condition precedent to the Closing, shall assume and assign to JVIS or the highest bidder, executory contracts so designated by JVIS pursuant to the Agreement related to the operation of the business under Bankruptcy Code section 365(a) and (c) and is entitled to the protections contained in Bankruptcy Code section 365(k);

e.   **Statutory Protections.** The parties to the Purchase Agreement shall be entitled to the protections contained in Bankruptcy Code section 363(m);

f.   **Operation of Business Property.** JVIS or the highest bidder shall assume operation of the Business Property after the Closing.

g.   **Higher and Better Offers.** The Purchase Agreement is subject to higher and better offers, such offers to conform with the set forth in the Motion to Approve Sale Procedure filed concurrent with this sale motion;

h.   **Break-Up Fee and Overbid Procedure.** In the event that JVIS is outbid in accordance with the Order Approving Sale Procedure, it will be entitled to a $25,000 break-up fee to compensate for its investment in the sale process and negotiations required to complete the Purchase Agreement.

i.   **Assignment and Waiver.**   Debtor is authorized to make or execute such assignments that are reasonable necessary to evidence the conveyance of the Business Property to Buyer.

3. that the sale of Business Property is free and clear of all liens and interests which such liens and interests shall transfer to the sale proceeds.

4. All objections and responses concerning the Motion are resolved and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, it is, and all reservations of rights or relief requested therein, overruled and denied.

5. The Agreement, and the Sale of the Business Property to Purchaser, are hereby approved and authorized in all respects.

6. The consideration provided by Purchaser for the Business Property shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

7. The Transactions are undertaken by Purchaser in good faith, Purchaser is a purchaser in good faith as that term is used in Bankruptcy Code section 363(m), and Purchaser is entitled to all of the protections afforded by Bankruptcy Code section 363(m); accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Business Property to Purchaser (including the assumption, assignment, and sale of any of the Assumed Executory Contracts and Assumed Leases, if any), unless such authorization is duly stayed pending such appeal.

8. The Debtors are authorized and directed to take any and all actions necessary or appropriate to:

(i) consummate the Sale (including, without limitation, to convey to Purchaser any and all of the Business Property) and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; and (ii) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement. The parties shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so as set forth in the Agreement have been met, satisfied or waived.

9. Upon the Closing, Purchaser shall assume and agree to pay, perform and otherwise discharge, the designated Assumed Liabilities in accordance with, and as limited by, the Agreement.

10. Purchased Assets shall not include any property owned by third parties unless such third parties have provided written consent to such sale of property.

11. Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Business Property in accordance with the Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

12. Upon the Closing, and except as otherwise expressly provided in the Agreement, Purchaser shall not be liable for any Claims against, and liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates be deemed for all purposes to have consummated, the sale, transfer and assignment of the Business Property to Purchaser free and clear of any and all Liens, Claims, Interests and Encumbrances and Assumed Liabilities), and (b) except as otherwise expressly provided in the Agreement, all such Liens, Claims, Interests and Encumbrances other than Permitted Exceptions and Assumed Liabilities shall be and hereby are released, terminated and discharged as to the Purchaser and the Business Property.

13. Purchaser shall not be deemed a successor of or to the Debtors or the Debtors' estates with respect to any Liens, Claims, Interests and Encumbrances against the Debtors or the Business Property, and Purchaser shall not be liable in any way for any such Liens, Claims, Interests and Encumbrances and Assumed Liabilities), including, without limitation, the Excluded Liabilities, Liabilities arising under any Environmental Laws or Excluded Assets. Upon the Closing of the Sale, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any Claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Purchaser on account of any of the Liens, Claims, Interests and Encumbrances, Excluded Liabilities, Liabilities arising under any Environmental Law or Excluded Assets, other than Assumed Liabilities and Permitted Exceptions or (b) asserting any Claims or enforcing remedies under any theory of successor liability, *de facto* merger, or substantial continuity.

14. Subject to the occurrence of the Closing Date, this Order (a) is and shall be effective as a determination that, upon Closing, all Liens,

Claims, Interests and Encumbrances existing as to the Business Property conveyed to Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Business Property conveyed to Purchaser. All such entities described above in this Paragraph 14 are authorized and specifically directed to strike all recorded Liens, Claims, Interests and Encumbrances against the Business Property from their records, official and otherwise and including without limitation those Liens, Claims, Interests and Encumbrances. If any person or entity, which has filed statements or other documents or agreements evidencing Liens, Claims, Interests and Encumbrances

on the Business Property shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens, Claims, Interests and Encumbrances, and any other documents necessary for the purpose of documenting the release of all Liens, Claims, Interests and Encumbrances which the person or entity has or may assert with respect to the Business Property, the Debtors and Purchasers are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Business Property.

15. Any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtors shall be transferred to Purchaser free and clear of Liens, Claims, Interests and Encumbrances and shall be delivered at the time of Closing to Purchaser.

16. This Order and the Agreement shall be binding in all respects upon all creditors and equity holders of any of the Debtors, all

successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances.

17. The Agreement and any related agreements, documents, or other instruments may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

18. To the extent prohibited by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any Permit or license relating to the operation of the Business Property sold, transferred, or conveyed to Purchaser, on account of the filing or pendency of the Debtors' chapter 11 cases or the consummation of the Sale.

19. Any amounts that become payable by the Debtors to Purchaser pursuant to the Agreement or any of the documents delivered by

the Debtors pursuant to or in connection with the Agreement shall (a) constitute administrative expenses of the Debtors' estates and (b) be paid by the Debtors in the time and manner as provided in the Agreement without further order of this Court.

20. Nothing contained in any order entered in the Debtor's bankruptcy case subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

21. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

22. The provisions of this Order are non-severable and mutually dependent.

23. The failure specifically to include or make reference to any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety.

24. The Court retains jurisdiction, even after the closing of these chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect Purchaser, or any of the Business Property, from and against any of the Liens, Claims, Interests and Encumbrances ;(3) compel delivery of all Business Property to Purchaser; and (4) resolve any disputes arising under or related to the Agreement, the Sale or Purchaser's peaceful use and enjoyment of the Business Property.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re: ETERON, INC.,

Jointly Administered Debtors.
[1]

Chapter 11
Case No. 18-45161-pjs

(Jointly Administered)
Hon. Phillip J. Shefferly

---

## NOTICE OF MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER 11 U.S.C. §363 FREE AND CLEAR OF LIENS AND INTERESTS WITH LIENS AND INTERESTS TO TRANSFER TO SALE PROCEEDS

The Debtor Eteron, Inc. filed its Motion to Approve Sale of Property of the Estate Outside of the Ordinary Course of Business Under 11 U.S.C. §363 Free and Clear of Liens and Interests with Liens and Interests to Transfer to Sale Proceeds.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to relief sought in the motion, or if you want the court to consider your views on the motion, within twenty-one (21) days, you or your attorney must:

1.        File with the court a written response or an answer, explaining your position at:

United States Bankruptcy Court
211 W. Fort Street, 2100

---

[1] In addition to the "Lead Case" of Eteron, Inc. (Case No. 18-45161-pjs), the Debtors shall also include Sakura, LLC (Case No. 18-45163-pjs)

Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Ethan David Dunn (P69665)              Kimberly Ross Clayson (P69804)
MAXWELL DUNN, PLC                      CLAYSON, SCHNEIDER & MILLER, PC
Co-Counsel for the Debtor              Co-Counsel for the Debtor
24725 W 12 Mile Rd Ste 306,            645 Griswold, Suite 3900
Southfield, MI 48034-8300              Detroit, MI 48226

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Respectfully submitted,
MAXWELL DUNN, PLC
*/s/ Ethan D. Dunn*_____
Ethan D. Dunn (P69665)
24725 W. 12 Mile Rd., Ste. 306
Southfield, MI 48034
(248) 246-1166
edunn@maxwelldunnlaw.com

Dated:  June 21, 2018