UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                        Chapter 11
ETERON, INC.                                  Case #18-45161
                                              Hon. Phillip J. Shefferly

                    Debtor in Possession
_____/

## DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

### I.      PLAN OF REORGANIZATION

### INTRODUCTION

        This Liquidating Plan of Reorganization of Eteron, Inc. (the "Plan") is in two
parts. This Part I contains the plan pursuant to 11 U.S.C. § 1121.  The Debtor
recommends that you vote to accept the Plan. Each holder of a Claim entitled to vote on
the Plan must, however, review the entire Plan carefully, including all exhibits, in their
entirety, and determine whether or not to accept or reject the Plan based upon that
holder's independent judgment and evaluation. The description of the Plan in this
Disclosure is in summary form and is qualified by reference to the actual terms and
conditions set forth in Part II, which should be reviewed carefully before making a
decision to accept or reject the Plan. Capitalized terms used herein are as defined in the
text hereof or in Article I. Terms not defined herein shall have the meaning ascribed to
them in the Bankruptcy Code.

        This Plan is a liquidating plan and does not contemplate the continuation of the
Debtor's business. This Plan contemplates that the net proceeds from the liquidation of
assets of the Debtor's Estate will be distributed by the Debtor or Plan Administrator
pursuant to the terms of this Plan to the holders of various Claims and Interests

hereinafter described and to the extent provided in this Plan. Certain terms herein are defined in *Section 101 of the Bankruptcy Code* or in Section A below.

The information contained in this Disclosure (including any exhibits) is based upon a review of the Debtor's records, its business and its affairs and information provided by the Debtor's employees or former employees. Except as otherwise expressly indicated, such information has not been subject to audit or independent review.

The Plan provides distributions on to Claim holders who hold Claims as of the Record Date. Under § 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a Claim holder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claim holders.

The Debtor expressly reserves its right to alter, amend or modify the Plan at any time before its substantial consummation, subject to the restrictions or modification set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWISTH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.

**ARTICLE I**
**DEFINITIONS, GENERAL TERMS & CONDITIONS,**
**COMPUTATION OF TIME AND GOVERNING LAW**

**1.1 DEFINITIONS**

For the purpose of this Plan, the following terms shall have the meanings set out below unless the context clearly requires otherwise. Terms that are not defined below shall have the meaning provided in the United States Bankruptcy Code.

1.1.1 **Additional Recoveries**: All proceeds of the liquidation of the Debtor's Assets from any source held or received by the Debtor other than cash on hand as of the Effective Date, as well as all proceeds and assets recovered by the Debtor pursuant to the Distribution Order.

1.1.2 **Administrative Claim:** Any claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, (b) Professional Claims, and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.1.3 **Administrative Claim Bar Date**: The date that is thirty days after the Effective Date.

1.1.4 **Administrative Tax Claim**: A claim for any tax of a kind specified in section 503(b)(1)(B) and (C) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

1.1.5 **Allowed Administrative Claim**: That portion of an Administrative Claim that hasbeen allowed by a Final Order or has not been objected to within the time periods established by the Plan or a Final Order of the Court.

1.1.6 **Allowed Claim**: Any claim for which a proof of claim has been filed prior to the Bar Date or which is scheduled and not listed as disputed, contingent, or un-liquidated, and to which no objection has been timely filed; or any claim as to which an objection has been resolved by a Final Order of the Court establishing the priority and amount of such claim.

1.1.7 **Allowed Secured Claim:** A Secured Claim that is an Allowed Claim.

1.1.8 **Assets**: All of the right, title and interest of the Debtors in and to property of whatever type or nature (real, personal, mixed, tangible or intangible), including property of the Debtor's Estate, and property recovered by the Debtor pursuant to the Distribution Order.

1.1.9 **Avoidance Actions**: Causes of action arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

1.1.10 **Bar Date**: August 6, 2018

1.1.11 **Case:** This Chapter 11 Bankruptcy case.

1.1.12 **Chapter 11**: Chapter 11 of the Bankruptcy Code.

1.1.13 **Claim**: Claim shall have that meaning specified by §101(5) of the Code.

1.1.14 **Closing Date**: That date, as soon as practicable after the Confirmation Date, at which time all documents, agreements, and instruments necessary for implementation of the Plan shall be executed, and in any event, no later than the Effective Date.

1.1.15 **Code**: The United States Bankruptcy Code, Title 11 of the United States Code as enacted in 1978 and thereafter amended.

1.1.16 **Confirmation Date:** The date on which the Confirmation Order is entered.

1.1.17 **Confirmation Order:** The Order or Orders confirming this Plan.

4

1.1.18 **Court:** The United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

1.1.19 **Creditor:** Any person or entity having an Allowed Claim against Debtor or property of Debtor.

1.1.20 **Debtor**: Eteron, Inc.

1.1.21 **Effective Date:** Thirty days after the Confirmation Order becomes a final order.

1.1.22 **Estate:** The estate created under §541 of the Code.

1.1.23 **Filing Date:** April 9, 2018

1.1.24 **Group:** means Creditors who hold Claims against this estate which are (i) not subject to being placed in a Class pursuant to Section 1123(a)(1) of the Bankruptcy Code, and (ii) not entitled under Section 1126 of the Bankruptcy Code to vote to accept or reject the Plan.

1.1.25 **Liquidating Debtor:** Eteron, Inc. to the extent the Debtor remains in existence on and after the Effective Date.

1.1.26 **Petition Date:** April

1.1.27 **Plan:** This Plan of Liquidation, including any modifications, amendments or corrections thereof.

1.1.28 **Plan Administrator:** the law firms of Maxwell Dunn, PLC and Clayson, Schneider, Miller, P.C.

1.1.29 **Rules:** (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, (b) the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and (c) the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

5

1.1.30  **Secured Claims:**  Claims of creditors claiming valid and non-voidable liens against assets of the Debtor.

**1.2** <u>GENERAL TERMS AND CONDITIONS</u>
The following general terms and conditions apply to this Plan.

1.2.1  **Claims:**  Various types of claims are defined in this Plan.  The Plan is intended to address all claims against the Debtor or property of the Debtor of whatever character, whether or not contingent or liquidated, or whether or not allowed by this Court pursuant to § 502(a) of the Code.  However, only those claims allowed pursuant to § 502(a) of the Code will receive the treatment provided by this Plan.

1.2.2  **Time for Filing Claims:**  All creditors other than creditors holding an Administrative Claim, or a Rejection Claim, including creditors having damage claims by reason of § 1124(2)(c) of the Code, must have filed proofs of claim, if necessary, by the Bar Date.  Rejection claims must be filed within thirty (30) days after the Confirmation Date.  Any claim which must be filed by the Bar Date and which is not filed by such date shall be forever barred.

1.3 <u>**RULES OF INTERPRETATION**</u>.  For purposes of the Plan:

1.3.1  Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular

terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2   Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  Except as otherwise ordered by the Bankruptcy Court, all exhibits, as amended, modified or supplemented, shall be incorporated by reference into this Plan for all purposes.

1.3.3   The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4   Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or affect the interpretation of the Plan.

1.3.5   The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3.6   The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous.  However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

7

1.5 **COMPUTATION OF TIME.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern.

1.6 **GOVERNING LAW.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.7 **EXHIBITS**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein; and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. **All Exhibits may be revised prior to the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

## ARTICLE II
## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

The following is a designation of the Classes of Claims and interests under the Plan. Administrative Expense Claims and Priority Claims have not been classified and are

excluded from the following Classes in accordance with Bankruptcy Code Section 1123(a)(1). A Claim or Interest is included in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and, unless otherwise herein provided, is included in a different Class to the extent that any remainder of the Claim or Interest fits within the description of such different Class. A Claim or Interest is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid prior to the Effective Date, and, in the case of an Interest, only to the extent that such Interest is outstanding immediately prior to the Effective Date.

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Unresolved Claim in respect of the period from the Petition Date to the date such Unresolved Claim becomes an Allowed Claim or from the date the Unresolved Claim is Allowed until the date distributions are made in respect of such Claim.    Administrative Claims and Priority Claims shall be paid as follows:

2.1    **Group 1 – Administrative Claims.**  The claims of Group 1 shall consist of all allowed administrative claims, including any taxes that qualify as administrative claims.

2.1.1 Claims included in this group shall retain their priority notwithstanding the confirmation of this plan, including, but not limited to:  (i) the occurrence of the Effective Date; (ii) the filing by the Reorganized Debtor of any subsequent proceeding under any chapter of the Bankruptcy Code.  The Reorganized Debtor shall remain responsible for every Claim in this group.

9

2.1.2 After payment in full of all claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, each claimant in this Group shall be paid the full amount of its Claim on such date as may be mutually agreed upon between Debtor or the Reorganized Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its Final Order, if necessary, allowing and approving the Debtor's payment of such Administrative Claim.

2.1.3 The Bar Date for asserting any Administrative Claim, except for any Administrative Claim for Professional Fees against the Reorganized Debtor shall be twenty (20) days after the Effective Date. Except as otherwise provided by order of the Bankruptcy Court, any Administrative Claim except for any Administrative Claim for Professional Fees first asserted after this Bar Date will not be Allowed and shall not be entitled to payment as an Administrative Claim.

2.1.4 Group 1 consists, without limitation, of Holders of Administrative Claims, if and when allowed. Holders of Administrative Claims may include, without limitation,; MAXWELL DUNN, PLC and CLAYSON, SCHNEIDER MILLER, P.C. for professional fees in the combined estimated amount of >150,000.00, William Malek, CVA, for professional fees in the estimated amount of $25,000.00, NYATEX in the amount of $38,435.04, DAN HAYDEN SALES in the estimated amount of $2,000.00, and the MICHIGAN UNEMPLOYMENT INSURANCE AGENCY ("UIA") in the amount of $7,233.99.

2.2    **Group 2 – Priority Tax Claims.**  The Claims of Group 2 shall consist of the Allowed Claims that are titled to priority under § 507(a)(8) of the Bankruptcy Code.

2.2.1  After payment in full of all Claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, the Claimants of this Group shall receive payment on account of such Priority Tax Claim  as soon as practicable after the Effective Date or the date upon which such Claim becomes an Allowed Claim, whichever is later.. The Allowed Claims of this group may be paid in full at any time prior to the fifth anniversary of the Petition Date, but only after payment of all outstanding Professional Fees.  The Allowed Claims of this group shall be paid in full before any distribution is made to any other claimant with an Administrative Claim or an unsecured claim, in the event that payment on such claims are made in full prior to sixty months following the Petition Date.

2.2.2 Group 2 consists, without limitation, of Holders of Priority Tax Claims, if and when Allowed.  Holders of Priority Tax Claims may include, without limitation, the following:     the INTERNAL REVENUE SERVICE in the estimated amount of $126,673.00, the MICHIGAN UIA in the estimated amount of $21,709.00, and the MICHIGAN DEPARTMENT OF TREASURY in the estimated amount of $65,000.00.

2.2.3 Upon the failure of the Debtor or Reorganized Debtor, as applicable, to make any payments due on a Priority Tax Claim, when Allowed, that is not cured on or within thirty (30) days of the mailing of a written notice of default by the affected Priority Tax Claim Creditor, such Creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this court.

2.2.4    To the extent practicable, in the event of a conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, all property of the Debtor, Debtor-In-Possession, or Reorganized Debtor, including all property which will revest in the Liquidating Debtor pursuant to Confirmation of the Plan, and all property acquired by the Liquidating Debtor subsequent to the Plan Confirmation shall be property of the Chapter 7 estate.

2.2.5    Notwithstanding any provision in the Plan to the contrary, nothing shall (i) affect the ability of a Priority Tax Claim Creditor to pursue to the extent allowed by non-bankruptcy law any non-debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Priority Tax Claim Creditor; and (ii) affect the rights to assert setoff or recoupment, and such rights are expressly preserved.

2.3    **Determination of Priority Tax Claims.**   The Debtor or Reorganized Debtor shall have the right to challenge any Priority Tax Claim through the Claims Objection Process set forth in this Plan and the Bankruptcy Code, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes, and the computation of the tax. The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.

### ARTICLE III
### TREATMENT OF CLASSES OF CLAIMS OR INTERESTS
### NOT IMPAIRED UNDER THE PLAN,
### AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides claims and interests into the following classes and treats them as follows:

**3.1** **Class One.** Class One shall consist of the Allowed Secured Claim of the Old National Bank (hereinafter "ONB"). ONB has filed a single secured claim in the amount of $2,526,459.00, which is comprised of two loans: a note secured by Debtor's personal property and mortgage on real property owned by jointly administered Debtor, Sakura Enterprises, Inc. The respective balances are approximately $350,589.00 on the note ("Loan A") and $2,177,775.00 on the mortgage ("Loan B"). ONB's claim is purportedly secured by all of the Debtor's assets. Debtor estimates the value of its assets is approximately $630,000.00. As such, ONB is not fully secured by the Debtor's assets alone. Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the ONB claim under this Plan, or as provided by the Bankruptcy Code, including, but not limited to, surcharge under § 506(c) of the Code.

**3.1.1** Upon Confirmation, ONB shall be paid an amount required to pay Loan B in full (approx. $350,589.00). Any remaining balance shall be treated as a Class 3 General Unsecured Claim with respect to Debtor.

**3.1.2** ONB shall continue receiving regular monthly payments on Loan A from Sakura Enterprises, Inc., for the duration of the term of Loan A.

**3.1.3** **This class is impaired.**

**3.2** **Class Two.** Class Two shall consist of the Allowed Secured Claim of Sterling Commercial Credit – Michigan (hereinafter "Sterling"). Sterling has filed a secured claim in the amount of $829,493.00 that is purportedly secured by all of Debtor's assets and subject to adjustment based on payments received by Sterling

13

during the pendency of this case. The assets of the Debtor are estimated to total $630,000. After payment of higher priority claims, the claim of Sterling would be partially secured and partially unsecured. Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the Sterling claim under this Plan, or as provided by the Bankruptcy Code, including, but not limited to, surcharge under § 506(c) of the Code.

**3.2.1** Sterling shall be paid from the proceeds of collateral securing its claims, if any, and any amount not paid from the proceeds of such collateral shall be treated as a Class 4 claim. The Estate reserves the right to either liquidate the collateral or return it to the holders of Class 2 claims.

**3.2.2** **This class is impaired.**

**3.3** **Class Three.** Class Three shall consist of the Allowed Secured Claim of the Internal Revenue Service ("IRS"). The IRS has filed a secured claim in the amount of $84,578.45. The IRS has asserted a statutory lien in all of Debtor's assets, which have an estimated total value of $630,000.00. After accounting for higher priority claims, the claim of the IRS is estimated to be wholly unsecured. Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the IRS claim under this Plan, or as provided by the Bankruptcy Code.

**3.3.1** The IRS shall be paid from the proceeds of collateral securing its claims, if any, and any amount not paid from the proceeds of such collateral shall be treated as a Class 4 claim. The Estate reserves the right to either liquidate the collateral or return it to the holders of Class 3 claims.

**3.3.2** **This class is impaired.**

14

**3.4** **Class Four.** Class Four shall consist of the Allowed General Unsecured Claims. The estimated General Unsecured Claims total $1,615,000.00. Notwithstanding anything contained in this paragraph, the Debtor reserves all its rights to object to the claims of General Unsecured Creditors under this Plan, or as provided by the Bankruptcy Code.

**3.4.1** The holders of an Allowed Claim in this class shall be paid, on a pro rata basis, all funds recovered by the Estate after all preceding classes are paid in full.

**3.4.2** **This class is impaired.**

**3.5** **Class Five.** Class Five shall consist of the claims of all equity interest holders. 100% of the equity interests are held by John Kim, II. The estimated Class 5 Claims total $250,478.00.

**3.5.1** The holders of Allowed Claims in this class shall be paid, on a pro rata basis, all funds recovered by the Estate after all preceding classes have been paid in full with interest.

**ARTICLE IV**

**EXECUTION AND IMPLEMENTATION OF THE PLAN**

**4.1** **Termination of Operations and Liquidation of Assets.** All of Debtor's assets, with the exception of cash and accounts receivable, were sold for $380,000.00to JVIS FH, LLC pursuant to the Court's Order Approving Sale Of Property of the Estate Outside the Ordinary Course of Business Under 11 U.S.C. § 363 (*See Dkt. #116*). Subsequent to that sale, Debtor has ceased operations, but has continued to collect outstanding receivables. There has not been a distribution order entered and all

15

proceeds from the sale are held in Debtor counsel's client trust account. All other receivables are being collected and held in the Debtor's DIP account.

**4.2     Distribution of Proceeds.** The Confirmation Order shall serve as an order authorizing distribution of all proceeds in the manner set forth in this Plan. Following confirmation, the Estate shall continue to seek to liquidate all intangible Assets, including but not limited to Accounts Receivable, Avoidance Actions, and any other causes of action in a prompt and commercially reasonable manner. Upon liquidation and receipt of the proceeds of any such Assets, the Plan Administrator shall make periodic distributions in accordance with Articles II and III of the Plan; provided, however, that distributions shall be made at least quarterly in any calendar quarter in which the Plan Administrator holds cash in excess of $10,000. Subsequent to any such distribution, the Plan Administrator shall promptly file a distribution report with the Court. The Plan Administrator may reserve, in its sole discretion, sufficient funds from the proceeds such Assets to satisfy reasonably anticipated administrative expenses.

**4.3     Accounting.** Any party in interest may request from the Plan Administrator an accounting of Debtors' Assets (and the proceeds of same) at any time, and the Plan Administrator shall provide such an accounting within a reasonable time.

**4.4     Final Distribution Report.** The Plan Administrator shall prepare and file with the Court a final distribution report twenty (20) days prior to making the final distribution under this Plan. The report shall disclose the total amounts distributed or to be distributed under this Plan.

**4.5 Professional Fees.** All services performed or expenses incurred by any professional on behalf of the Debtor or Liquidating Debtor with respect to this Chapter 11 case after the Effective Date shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, FRBP 2016, after the Effective Date, no professional shall be required to disclose payments from the Debtor or the Liquidating Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtor and the Liquidating Debtor arising from the Effective Date shall be billed directly to the Liquidating Debtor, and the Bankruptcy Court shall only review that portion to which the Liquidating Debtor objects. The Liquidating Debtor shall pay the portion not objected to in accordance with the terms of the invoice.

**4.6 Avoidance Actions.** Potential Avoidance Actions described in the Debtor's schedules and Disclosure Statement and are incorporated herein by reference. The Debtor has not investigated any Avoidance Actions. Upon the Effective Date of the Plan, all Avoidance Actions which have not otherwise been released or settled in accordance with the terms of the Plan may be pursued by the Liquidating Debtor.

**4.7 Preservation of Rights of Action.** Except to the extent that any rights of action by Debtor or Liquidating Debtor are specifically released or settled pursuant to the terms and conditions set forth in this Plan, or otherwise treated in connection with this Plan, the Confirmation Order, any settlement agreement approved during the Chapter 11 Case in accordance with § 1123(b) of the Bankruptcy Code:

(a) The Preserved Rights shall remain assets of and vest in the Reorganized Debtor, whether or not related litigation is pending on the Effective Date, and

17

whether or not the Preserved Rights have been listed or referred to in this Plan, the schedules, or any other document filed with the Bankruptcy Court;

(b) Neither the Debtor nor the Reorganized Debtor waives, relinquishes, or abandons any Preserved Rights (nor shall it be stopped nor otherwise precluded from asserting the same):

    (i)    Whether or not the Preserved Rights have been listed or referred to in this Plan, the schedules, or any other document filed with the Bankruptcy Court;

    (ii)    Whether or not the Preserved Rights are currently known to the Debtor; and

    (iii)    Whether or not a Defendant or Counter-Defendant in any litigation relating to the Preserved Rights filed a Proof of Claim in the Chapter 11 Case, filed a Notice of Appearance or any other notice or pleading in the Chapter 11 Case, voted to accept or reject this Plan, or received or obtained any consideration under this Plan; and

(c) The Reorganized Debtor may commence, prosecute, defend against, settle, and realize upon any Preserved Rights in its sole discretion, in accordance with what is in the best interests, and for the benefit of, the Reorganized Debtor; except as otherwise provided herein, any recoveries realized by the Reorganized Debtor from the assertion of any Preserved Rights will be the sole property of the Reorganized Debtor; and to the extent necessary, the Reorganized Debtor will be deemed the representative of its former Estate under § 1123(b) of the Bankruptcy Code.

## ARTICLE V

## EFFECT OF CONFIRMATION

18

**5.1** __Discharge of Indebtedness.__ Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby, act to discharge and release the Claims of all Creditors of all Interests against the Debtor and the Liquidating Debtor and shall be deemed to constitute a full and complete settlement with such Creditors and/or Interest Holders.

**5.2.** __Retention of Liens.__ Confirmation of this Plan shall not disturb the perfected liens of any class of secured creditors. With respect to any Creditor holding a Secured Claim, such Creditor shall retain its lien(s) securing such Claim until such time that its Secured Claim is satisfied.

**ARTICLE VI**
**MODIFICATION OF THE PLAN**

**6.1** __Amendments to the Plan:__ The Debtor may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of this Court, and such proposals shall be deemed to be part of the Plan. After confirmation, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the effected Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, or otherwise modify the Plan.

**ARTICLE VII**
**JURISDICTION OF THE COURT**

**7.1** This court shall retain jurisdiction in this matter until the Plan has been fully consummated, including, but not limited to, the following purposes:

A.     The classification of the claim of any Creditor and the re-examination of Claims which have been allowed for the purposes of voting, and the

determination of such objections as may be filed to the Claims of Creditors. The failure by any Debtor or Liquidating Debtor to object to or to examine any Claim for the purposes of voting shall not be deemed a waiver of any right to object to, or to examine, the Claim in whole or in part. Furthermore, the fact that this Plan has provided treatment for the benefit of a particular Creditor shall not in any way be deemed a waiver of any right to object to or re-examine any Claim or any Secured Interest, whether by mortgage or otherwise which secures Claim in whole or in part.

B. The determination of all questions and disputes regarding title to the assets of the Estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between any Debtor, Liquidating Debtor, or any other party.

C. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan, or the Confirmation Order, if necessary, to carry out the purposes and intent of this Plan.

D. The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided in Article VI of the Plan.

E. The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan, including the restructuring transactions.

F. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, the Liquidating Debtor, or any party-in-interest, and to impose such limitations, restrictions, terms, and conditions of such title, rights and powers as this Court may deem necessary to accomplish its obligations under the Plan.

G.    The review and approval of all Professional Fee Applications for services rendered prior to the Confirmation Date, and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date, to the extent that any Debtor or the Liquidating Debtor dispute any portion thereof.

H.    The assumption or rejection of executory contracts under Article X of this Plan.

I.    The right to pursue any of the Avoidance Actions.

J.    The entry of an order determining the validity of any Lien.

K.    The entry of an order concluding and terminating this Chapter 11 Case.

L.    To hear and determine matters concerning state, local and federal taxes pursuant to §§346, 505, 525 and 1146 of the Code;

M.    To hear and determine any action or proceeding brought by the Debtors under §§329, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date;

N.    To determine the validity, extent and priority of all Claims and liens against property of the Debtors;

O.    To determine the legitimacy and/or validity of any amounts owed to the Debtor by any third parties.


**7.2**    On and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained, pursuant to § 105 of the Code, directly or indirectly, from levying, seizing, executing or otherwise exercising control over or interfering with any asset of the Debtor or debtor's principal, John Kim, II, in a manner inconsistent with the terms of this Plan, for the purpose of paying or enforcing any claim

against the Debtor or guaranteed by debtor's principal. This Court retains jurisdiction to enter such supplemental injunctive and enforcement orders as may be necessary or appropriate to protect assets of the Debtor from treatment in a manner inconsistent with this Plan.

**7.3** If the Court abstains from exercising or declines to exercise jurisdiction or it is otherwise without jurisdiction over any matter arising in, arising under, or related to the Case, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article shall have no effect upon and shall not control, prohibit or limit the exercise or jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE VIII
## TITLE TO PROPERTY

**8.1** The Debtor's Assets shall not re-vest with the Debtor and shall remain property of the Debtor's Chapter 11 Estate.

## ARTICLE IX
## UNITED STATES TRUSTEE FEES

**9.1** **U.S. Trustee Fees.** The Liquidating Debtor shall pay to the United States Trustee the appropriate sum required by 28 USC § 1930(a)(6), and shall provide the relevant information, including Monthly Operating Reports, as required by the Office of the United States Trustee until the Effective Date or such date that this Case is closed.

## ARTICLE X
## EXECUTORY CONTRACTS

**10.1** **ASSUMPTION OF EXECUTORY CONTRACTS.** On the Effective Date, the Liquidating Debtor shall be deemed to have rejected all executory contracts.

**10.2** **REJECTION CLAIMS.** Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after the Confirmation Date to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety. The Notice shall contain a provision informing any potential Creditor of this requirement and shall be served on such potential Creditor(s)

**10.3** **OBJECTIONS TO REJECTION CLAIMS.** The Liquidating Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article XI.

## ARTICLE XI
## OBJECTION TO CLAIMS

**11.1** **TIMING OF OBJECTIONS.** Objections to Claims and any suit to subordinate any such Claim may be filed only by the Estate through the Debtor or, after the Effective Date, by the Plan Administrator, whenever it is determined that such actions are likely to benefit the Estate. Such objections and suits shall be served upon each holder of each of the Claims and Interests to which objections are to be made, as soon as practicable after filing with the Court.

**11.2    EXTENT OF OBJECTIONS.**  As part of the objection process set forth in Article 11.1 above, and without limiting same, the Plan Administrator shall have the right to object to the claim of any Lien based upon Section 506 of the Bankruptcy Code or for any other reason as shall be allowed by applicable law.  If this Plan of Reorganization is accepted by all impaired Classes of Creditors, the Debtor retains its rights to initiate all causes of action under §§ 547 through 553 of the Bankruptcy Code and may bring any action to avoid a lien for any reason.  Debtor shall seek confirmation under §1129(b) if necessary.

**11.3    PAYMENT UPON RESOLUTION OF CONTESTED CLAIMS**.  Except as may otherwise be agreed with respect to any contested Claims, no payments or distributions shall be made with respect to all or any portion of a contested Claim unless and until all objections to such contested Claim have been determined by a Final Order. Payments and distributions to each holder of a contested Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan with respect to the class of creditors to which the holder of such an Allowed Claim shall be made as soon as practicable after the date that the order or judgment of the Court allowing such claim is a Final Order.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1    DISPUTED PAYMENTS.**  Notwithstanding anything in this Plan to the contrary, neither the Debtor nor Liquidating Debtor shall be obligated to make any payments toward the disputed portion of any Contested Claim.

24

**12.2** <u>**RELEASE OF LIENS.**</u>  The Debtor, Liquidating Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.  This shall include without limitation any execution by the Debtor or Liquidating Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgage discharges, releases, or terminations.

**12.3** <u>**SETOFFS AND COUNTERCLAIMS.**</u>  No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to setoff a Claim against an obligation to the Debtor or Liquidating Debtor arising in connection with a different contract.  Unless expressly asserted in the Chapter 11 Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to Article V of this Plan.  The terms of this Article shall not apply to any taxing authority.

**12.4** <u>**COMPROMISE OF LITIGATION.**</u>  The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action and any action in the Debtor's Disclosure Statement) available to the Debtor, the Estate, the Debtor-in-Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

**12.5** <u>**SUCCESSORS AND ASSIGNS.**</u>  This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

**12.6   NOTICE.**   All future notices required under this Plan or Confirmation Order in this case shall be mailed to the Plan Administrator at:

24725 W. 12 Mile Road, Suite 306

Southfield, MI 48034

**PART II – DISCLOSURE STATEMENT**

**I.       INTRODUCTION AND OVERVIEW**

The Debtor provides this Part II (the "Disclosure Statement")  in order to provide information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a hypothetical reasonable investor typical of holders of Claims or Equity Interests of the relevant Class to make an informed judgment about whether to support the Plan. The Disclosure is intended for information purposes. The actual terms of the Plan are set forth in Part I above.

**A.       Purpose of Disclosure Statement**

Unless otherwise defined, all capitalized terms shall have the meaning ascribed to them in the Debtor's Plan of Liquidation (the "Plan") unless the context indicates a different meaning.

26

This disclosure statement is submitted pursuant to Section 1125 of the Bankruptcy Code. The Debtor has filed the Plan with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, a copy of which accompanies this Disclosure Statement.

The purpose of this Disclosure Statement is to disclose information deemed by it to be material and necessary for Creditors to make a reasonably informed decision in exercising their right to vote for the acceptance of the Plan.

**B.** **Source of Information**

The Disclosure Statement and the Plan have been prepared from information furnished by the Debtor. An independent investigation has not been conducted to verify such information.

The statements contained in this Disclosure Statement are made as of the date filed. Delivery of this Disclosure Statement shall not create an implication that there has been no change of the facts set forth within this Statement since the date of this Disclosure Statement.

**NO PERSON OR ENTITY HAS BEEN AUTHORIZED BY THE DEBTOR OR THE COURT TO MAKE ANY REPRESENTATIONS CONCERNING THE DEBTOR**

**OR ITS FINANCIAL AFFAIRS, OTHER THAN AS SET FORTH IN THIS**

**DISCLOSURE STATEMENT.**

## II. DESCRIPTION OF DEBTOR

### A. The Debtor-In-Possession

The filing of the Voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code on the Petition Date commenced this Chapter 11 case. Upon filing the Chapter 11 case, the Debtor became a "Debtor-in-Possession", as that term is understood in the Bankruptcy Code. The Debtor desires to liquidate it's assets in the manner set forth in the Plan.

### B. Debtor's Principals and Management

Since the Petition Date, the Debtor's daily management has been the primary responsibility of John Kim, II. Mr. Kim has been continuously involved in the business from the time he started Eteron, Inc. Mr. Kim owns 100% the Debtor. Mr. Kim has more than 20 years operating the Debtor as a Tier III supplier of flocking to Tier II and Tier I automotive suppliers. Mr. Kim had an annual salary of $80,000.00. Since the date of the sale, Mr. Kim has not taken a salary. Mr. Kim also owns Sakura Enterprises, Inc. along with his wife Maureen Kim. Sakura Enterprises, Inc. is a single-asset real estate

28

holding company which owns the building where Debtor operated. Debtor paid for all costs of owning and operating the real estate owned by Sakura Enterprises.

### C. <u>Description of Debtor's Business and Reasons for Chapter 11 Filing</u>

Eteron, Inc. was incorporated in 2001 in Farmington Hills, Michigan. Eteron manufactured and supplied flocked products, flocking machinery and flock technology for automotive and commercial applications such as fasteners, glove boxes and console bins. The business grew from initially supplying only General Motors suppliers to supplying parts for Ford, Toyota and Fiat Chrysler. For many years the company enjoyed consistent growth and a strong client list.

However, in 2007, Debtor lost many of its largest customers as the auto industry contracted and suppliers either downsized or went entirely out of business. In an effort to manage and maintain its cash flow, the Debtor took several loans, which included factoring its outstanding receivables. Following the downturn in the automotive industry, many suppliers began to take their flocking operations in-house leaving Eteron and only four other independent flocking suppliers in North America. For nearly two years, Mr. Kim tried to find a buyer that was financially capable of infusing the necessary cash into the Debtor to give it the competitive edge needed, but was unable to do so. During this time, sales continued to decline.

In 2018, after several years of declining sales, the Debtor's receivable factoring bank cut the Debtor's access to the line of credit pending an audit reconciliation. The loss of this line of credit prompted the Debtor to seek to reorganize and file this Chapter 11 case.

### I. <u>POST-PETITION EVENTS OF SIGNIFICANCE</u>

### A. <u>Post-Petition Transfers Outside the Ordinary Course of Business</u>

29

Pursuant to the Court's July 20, 2018 Order Approving Sale of Property of the Estate Outside of the Ordinary Course of Business Under 11 U.S.C. § 363 Free and Clear of Liens and Interests with Liens and Interest to Transfer to Sale Proceeds (*Dkt. #116*), the Debtor sold substantially all of its assets to JVIS FH, LLC for $380,000.00. There has not been a distribution of the proceeds aside from those set forth in the Report of Sale of Assets of Debtor (*Dkt. #119*).

### B.   Summary of Post-Petition Financing, Cash Collateral, and Adequate Protection Orders:

On April 17, 2018, this Court entered an interim order authorizing the Debtor to use cash collateral *(Dkt. #30)*. On May 18, 2018 a second interim order was entered authorizing Debtor's use of cash collateral that became final. By these orders, the Debtor was able to continue providing production to its customers and move toward a successful sale and orderly liquidation of the business. There have been no separate adequate protection orders or post-petition financing.

### C.  Litigation Involving the Debtor

At the time of filing, Debtor was involved in an emissions lawsuit with the MDEQ in Ingham County Circuit Court. There were no other pending lawsuits as of the Petition Date in which Debtor was a named Party. The pending litigation was stayed pursuant to § 362 of the Bankruptcy Code. Debtor has not been involved in any litigation in any U.S. Court since the Petition Date.

## II.   ASSETS AND LIABILITIES

### A.  Liquidation Analysis

ASSETS:

    a) Funds on Hand               $380,000.00

    b) Outstanding A/R           $250,000.00

**TOTAL:**                                      **$630,000.00**


CLAIMS:

    <u>Secured</u>

    a) Old National               $2,526,459.00

    b) Sterling Commercial     $$829,493.00

    c) IRS                       $84,578.45

       <u>Total Secured</u>         <u>$3,440,530.45</u>

    <u>Admin</u>

    a) Debtor Atty. Fees       $150,000.00

    b) US Trustee Fees        $10,000.00

    c) Nyatex                 $38,435.04

    d) Dan Hayden Sales       $2,000.00

    e) Michigan UIA          $7,233.99

       <u>Total Admin</u>            <u>$207,669.03</u>

    <u>Priority</u>

    a) IRS                      $126,673.00

    b) Dan Hayden Sales       $12,850.00

    c) Michigan UIA          $21,709.00

    d) Park Lane Cork         $421.00

    e) Dobry's Supermarket    $5,107.00

    f) Greenfield Supermarket   $311.00

    g) Pancho Foods         $5,429.00

**Total Secured, Admin, & Priority**      **$3,820,699.48**

NET PROCEEDS AVAILABLE TO UNSECUREDS: $0.00 – 0% DIVIDEND

NET PROCEEDS AVAILABLE FOR DISTRIBUTION: $380,000.00

 

**B.**   <u>**Risks, Conditions and Assumptions in Liquidation Analysis**</u>

The fair market values listed above are highly speculative. Funds to be distributed assumes 100% collection of Accounts Receivable. Avioidance Action claims may yield additional funds for distribution, but such claims and their respective values have not been ascertained.

**C.**   <u>**Causes of Action**</u>

The Debtor reserves its right to collect all accounts receivable and any other amounts due to it for any reason. The Debtor reserves all setoff and recoupment rights of all kinds and the right to commence Avoidance Actions. The Debtor may have potential causes of action and reserves its right to bring a lawsuit against any entity listed on its schedules as owing a debt to the Debtor of any kind or any entity listed in the Statement of Financial Affairs as having received a transfer from the Debtor. More specifically, and without waiving any other claim, the Debtors may seek to avoid from any direct or indirect transferee, (i) under § 547 of the Code, any transfer of an interest of the Debtor in property, including all payments to vendors and suppliers that occurred within 90 days of the Petition Date, or, with respect to Insiders of the Debtor, within one year of the Petition Date; (ii) under § 544(a) and 545, any liens asserted against the Debtor, (iii) under §§ 544(b) and 548, any actual or constructive fraudulent

transfers or obligations, and (iv) under § 549, any unauthorized post-petition transactions.

At this time, the Debtor has not investigated all potential causes of action or Avoidance Actions and is not able to make any representation with respect to their value.

**D. Claims**

The claims against Debtor are those that have been set forth in the Plan that is filed in combination with this Disclosure Statement. Such claims have been treated in the Plan and are based upon the Proofs of Claims filed by the respective creditor. For those creditors who have not filed claims, the claim has been estimated. In no way shall the treatment of any Claim in the Plan indicate Debtor's acceptance of the filed Claim as Allowed. To the best of Debtor's knowledge, all claims have been listed in Debtor's Schedules and treated in the Plan.

### III. IMPLEMENTATION OF PLAN

**A. Financial Information**

1. **Pre-Petition Financial Summaries.** The Debtor has attached financial summaries relating to the two fiscal years prior to the Petition Date as **EXHIBIT A.** These documents summarize the Debtor's financial history prior to the commencement of the Debtor's bankruptcy proceeding.

2. **Post-Petition Financial Summaries.** The Debtor has attached financial summaries relating to the Debtor's financial performance during this Chapter 11 proceeding. **EXHIBIT B**. These documents summarize the financial

33

conditions pertaining to the Debtor's post-petition operations. The source of these summaries are the Debtor's books and Records.

**3.** **Post-Confirmation Projections.** Projections are not applicable in a liquidating plan.

B. **Tax Ramifications.** Not applicable in a liquidating plan.

## IV.    LEGAL REQUIREMENTS

**VI.**    **Legal Requirements**

*A. Voting procedures*

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtors Schedules of Assets and Liabilities <u>other</u> than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder

34

of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the Debtors' attorney by the deadline previously established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtors' attorney.

### B. Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

### C. Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1.     Each class of impaired creditors and interests must accept the plan, as described in paragraph VI.B., above.

2.     <u>Either</u> each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

### D. Modification

The Debtor reserves the right to modify or withdraw the plan at any time before confirmation.

### E.     Effect of confirmation

If the plan is confirmed by the Court:

1.     Its terms are binding on the Debtors, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2.     Except as provided in the plan and in 11 U.S.C. § 1141(d)(5):

In the case of an individual as in this case:

(1) Claims will be discharged, except as provided in 11 U.S.C. § 523 and 1141(d).

(2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§523 and 1141(d)(3).

Dated:  August 20, 2018                    Prepared and filed by:
                                           MAXWELL DUNN, PLC
                                           <u>/s/ Ethan D. Dunn</u>
                                           Ethan D. Dunn (P69665)
                                           24725 W. 12 Mile Road, Ste. 306

Southfield, MI 48034
(248) 246-1166
edunn@maxwelldunnlaw.com